COVINGTON, Judge.
Plaintiff, Ascension Savings and Loan Association, filed this suit to enforce a mortgage indebtedness affecting immovable property situated in the Parish of Ascension by ordinary process. The suit was brought against James A. Martinez and Florence Hans Martinez, the original mortgagors and makers of the promissory note, and also against Robert Furlow and Elsie Miley Furlow, the vendees and assum-ers of the mortgage. The defendants Martinez executed a note which was secured by an act of sale and mortgage dated June IS, 1970, on the subject property in favor of plaintiff, a savings and loan association. On September 8, 1970, by an act of sale with assumption of mortgage, the defendants Martinez sold the subject property to the defendants Furlow. Subsequently, the defendants Furlow got in arrears with the payments on the note. At the time of the filing of the suit they were some nine installments delinquent in the payment of the note. The defendants Fur-low did not answer the suit and a default was entered against them. The defendants Martinez answered the suit, claiming to have been discharged from the obligation because plaintiff had failed to inform them of the delinquency in payment and had granted without their consent extensions of time for making payments to the defendants Furlow.
After a trial on the merits against the original mortgagors and a confirmation of default against the assumers of the mortgage, the trial judge rendered judgment, giving written reasons therefor, in favor of plaintiff and against the defendants in solido for the amount sued for, and recognized plaintiff’s special mortgage and lien on the subject property. The Martinez petition for rehearing was denied, but the judgment was amended to protect the rights of the defendants Martinez against the Furlows. Thereafter the defendants Martinez devolutively appealed the judgment.
To support their position appellants rely upon the case of Isaacs v. Van Hoose, 171 La. 676, 131 So. 845 (1930). In Van Hoose, the evidence disclosed that the mortgage holder had sold certain property to. the original mortgagor, receiving in part payment mortgage notes payable annually. The original mortgagor then sold the property to a buyer who assumed the mortgage. Later the mortgage holder granted a two-year extension of time of payment, which extension was written on the back of each note. The original mortgagor was not a party to the extension agreement. After the assumer of the mortgage defaulted in the payments, the mortgage holder foreclosed on the property without making the original mortgagor a party to the executo-ry process. Subsequently, the mortgage holder brought suit for the unpaid balance against the original mortgagor who defended on the ground that he was released from the obligation by the extension of the time of payment. The Court sustained this position holding that the extension of time granted to the assumer of the mortgage operated as a discharge of the original mortgagor because it deprived him of his subrogation and his legal right to proceed on the original mortgage indebtedness for at least two years.
We have considered the Van Hoose case, and agree with the trial judge that it is not apposite to the instant case. In the Van Hoose case the mortgage holder agreed with the assumer of the mortgage to extend the time of payment of the notes to the detriment of the original mortgagor. The extension agreement was written on the back of each note. The original mortgagor was not a party to the extension agreement. In the instant case there was no extension agreement. There was merely a default by the assumer of the mortgage and a forbearance to sue on the part of the mortgage holder. The case of Wilkinson v. Adams, 179 La. 630, 154 So. 630 (1934), is identical to the Van Hoose case and is likewise inapposite.
In the instant case the facts show that the assumers of the mortgage, the defend *360 ants Furlow, were permitted to get four installments in arrears on their payments, when plaintiff mailed a letter reminding them of the delinquency, a copy of which letter was sent to the defendants Martinez. No express extension of time was granted to the assumers of the mortgage. By the time suit was filed the Furlows were some nine installments in arrears. The trial court found “only a default on the part of Mr. and Mrs. Furlow of which Mr. and Mrs. Martinez were timely apprised.”
As stated in Mills’ Succession v. Manasseh, La.App., 147 So. 77, 79 (2 Cir. 1933), the delay on the part of the plaintiff to enforce payment of the note was “in the nature of a temporary indulgence, and the rights of no one were altered thereby.”
In considering the question of an extension of time for payment, in Mutual Nat. Bank v. Coco, 107 La. 268, 31 So. 628 (1902), the Court wrote in its Syllabus:
“The mere fact that the holder of a note has failed to sue on it will not justify the inference that he consented to extend the time of payment, in the face of positive testimony to the contrary.”
Moreover, the burden of proving that an extension of time of payment was granted to his detriment rests upon the ob-ligor, the original mortgagors in the instant case. See Schultz v. Robinson, La.App., 241 So.2d 921 (3 Cir. 1970); Emblem, Inc. v. Picolo, La.App., 123 So.2d 799 (4 Cir. 1960). Herein the obligors have not sustained their burden of proof.
The testimony of Cecil Robert, the manager of plaintiff’s Gonzales office, reveals that no extension of time of payment was granted to the Furlows. Robert’s testimony is corroborated by Mr. Furlow, one of the named defendants (who testified under cross examination by counsel for defendants Martinez, although Furlow filed no pleadings in the suit and permitted a default to be entered and confirmed against him).
 A further reason why the appellant can not prevail in the instant case is that the statutory law permits plaintiff to forbear to sue and to extend the time for payment without notice to the original mortgagor. Under the laws of this State loan associations, such as the plaintiff herein, are favored parties. See Mayre v. Pierson, 171 La. 1077, 133 So. 163 (1931); Succession of D’Anna, 6 La.App. 142 (Orl.1927).
In the Pierson case, the Court candidly stated:
“Our own Legislature has deemed it to be in the interest of our people to encourage the formation and operation of building and loan associations, and has enacted special laws giving them certain well-defined powers and privileges to be exercised in the promotion of their objects.”
One such special law, LSA-R.S. 6:837(B), explicitly allows such a loan association to act in the way plaintiff acted and to do the things that were done in the instant case.
This statutory provision, under the 1970 amendment, now reads as follows :
“In the event the ownership of the real estate security or any part thereof becomes vested in a person other than the party or parties originally executing the security instrument, and provided that there is not an agreement in writing to the contrary, an association may, without notice to such party or parties, deal with such successor or successors in interest with reference to said mortgage and vendor’s privilege, and the debt hereby secured in the same manner as with such party or parties, and may forbear to sue and may extend time for payment of or otherwise modify the terms of the debt secured thereby, without discharging or any way effecting (sic) the original liability of such party or parties thereunder or upon the debt thereby secured.”
*361 In the instant case there was no written agreement restricting plaintiff from dealing directly with the assumers of the mortgage (the successors in interest to the original mortgagors). Thus, clearly under the statutory law cited plaintiff was free to extend the time of payment, forbear from bringing suit against the successors to enforce collection, and to modify the terms of the secured indebtedness. Cf. Bank of Montgomery v. Reeves, La.App., 50 So.2d 214 (2 Cir. 1951).
Finally, there is no merit to the contention that the doctrine of equitable estoppel is applicable. This doctrine applies when a person, by his representations or conduct, leads another person to believe that certain facts exist, and the other person rightfully relies upon those facts to his prejudice. An essential element of equitable estoppel is prejudice. In American Bank & T. Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967), cited by defendants Martinez, the Court gave a definition of equitable estoppel as follows:
“Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.”
Then the Court stated:
“To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing. Justifiable reliance is fundamental.”
In the American Bank case, supra, the Court emphasized the significance of the justifiability of the reliance placed by the aggrieved party on the conduct of the party against whom equitable estoppel is pleaded. Unless the aggrieved party was justified in his reliance upon the conduct of the other party, equitable estoppel is inapplicable.
In the instant case there is no showing that any conduct of the plaintiff prejudiced the defendants Martinez, or that the defendants Martinez placed any justifiable reliance on any conduct of the plaintiff.
For the foregoing reasons the judgment of the trial court is affirmed at appellants’ costs.
Affirmed.