JIJONES, Judge.
Dorothy Mesa appeals the judgment of the district court dismissing her claim and granting the reconventional demand of Delores and Alphonse Spurlock. Following a careful review of the record, we affirm the judgment of the district court.
On May 10,1978, Dorothy Mesa and her husband, the now deceased Raymond Mesa, by act of credit sale, sold immovable property and improvements at 1333 South Saratoga Street to Delores Wares Spur-lock and Alphonse Spurlock. The terms of the sale were as follows: The Spurlocks paid $12,000 in cash and signed a promissory note for the $66,000 balance. The note was to be paid in equal consecutive monthly installments of $620.93 for a total of 234 months beginning on June 10, 1973, and continuing every month thereafter until paid, with interest at the rate of 9.5% per annum. The note was paraphed “ne varietur” for identification with an authentic act of credit sale executed on May 14, 1973. In the act of credit sale, the Spur-locks granted a mortgage on the property in favor of the holder of the note to secure its payment.
| ¡While the Spurlocks made all 234 installments from the date of inception, their payments were late more often than not. The Spurlocks failed to pay the installments on the note in accordance with its terms and repeatedly failed to pay installments when due. Each payment was accepted regardless of its untimeliness. The only written demand from Ms. Mesa to the Spurlocks was one letter in August of 1995. This letter advised them to “Please pay at least one payment per month, if not more, so that this debt can be retired.” Ms. Mesa neither threatened nor took legal action to enforce the untimeliness of the payments. The final payment was paid on January 7, 1996, some twenty-six months later than the date set forth in the amortization schedule to make the 234th payment. Both Ms. Mesa and the Spurlocks maintained separate records of the payments via a Schedule of Direct Reduction Loan. Both records reflected that on several occasions the monthly payments were made late. The handwritten entries on their respective schedules differed in some instances as to when the monthly payments were made and the Spurlocks’ schedule contained a handwritten note stating that “payments due on the 20th starting 5-20-78.”
As a result of the excessive late payments, Ms. Mesa claims that a balance of $19,218 remains although the Spurlocks have made 234 payments. Ms. Mesa filed this action to collect said amount, and to enforce the mortgage granted by the credit sale. Ms. Mesa first credited the late payments to the interest by authority of La. C.C. art. 1866. The Spurlocks filed a claim-in-reconvention for Ms. Mesa to sign and deliver a release of the mortgage on the property. The Spurlocks also filed a motion for summary judgment contending that the note had been satisfied and that Ms. Mesa was compelled to release the mortgage. The district court found in favor of the Spurlocks dismissing Ms. Mesa’s claims with prejudice and granting the I sSpurlocks’ claim-in-reconvention via sum *1093 mary judgment. Ms. Mesa appealed to this Court, and the matter was reversed and remanded for a trial on the merits. Mesa v. Spurlock, 99-0868 (La.App. 4 Cir. 5/3/00), 761 So.2d 652. On remand, the district court found in favor of the Spur-locks. It is from this judgment that Ms. Mesa appeals.
There were two issues raised in this case. The first issue is whether the district court erred in holding that Ms. Mesa was precluded from recovering the balance due on the note. Ms. Mesa argues that in the application of the doctrine of forbearance that even if she were found not to have complained about the late payments, which she denies, that her failure to complain would not in and of itself constitute a waiver of her right to collect the balance due. The Spurlocks contend that they maintained the same system of payments for a period of 22 years. Further, the Spurlocks argue that without complaint Ms. Mesa accepted all payments regardless of the timeliness of the payments, and therefore, she tacitly agreed that each payment was sufficient to satisfy the principal and interest of each installment. We agree.
The doctrine of forbearance is succinctly defined in First National Bank v. Higgs, 406 So.2d 673, 675 n. 1 (La.App. 2d Cir.1981), as follows:
Forbearance is a circumstance which can give rise to estoppel. Forbearance exists when a creditor acquiesces in or tolerates substandard performance of an obligation by the debtor without exercising his rights to enforce the obligation, thereby implying that such conduct is sufficient.
When forbearance reaches the level of equitable estoppel the creditor will be barred from suddenly demanding strict performance in order to avoid injustice to the debtor. Calhoun v. Huffman, 217 So.2d 733 (La.App. 3d Cir.1969); Sternberg v. Mason, 339 So.2d 373 (La.App. 1st Cir.1976). However, the creditor’s mere acquiescence or forbearance by not using all of his rights, when accompanied by protest or complaints to the |4debtor, does not rise to the level of estoppel which will later bar the creditor form using those rights to enforce the obligation. Burris v. Gay, 324 So.2d 11, 14 (La.App. 2d Cir.1975), writs denied 326 So.2d 377.
An obligee’s mere gratuitous forbearance from exercising its legal rights under the instrument of indebtedness does not create an agreement to extend the period of indebtedness. John M. Parker & Co. v. Guillot, 118 La. 223, 42 So. 782 (1907). Similarly, an extension of the debt cannot be inferred from a mere forbearance to sue where no extension of time is ever expressly granted by the holder. See Mutual Nat’l Bank v. Coco, 107 La. 268, 31 So. 628 (La.1902).
Mesa v. Spurlock, 99-0868 at p. 3, 761 So.2d at 654-5.
In the instant case, Ms. Mesa’s payment records reflect that from the inception, more often than not, the Spurlocks were late in paying the monthly installments, and, that the late payments were always accepted. While Ms. Mesa asserts that when the Spurlocks were late she called the Spurlocks and sent letters demanding payment, this testimony was contradicted by her son, Mr. Fred Mesa. Apparently Mr. Mesa knew nothing about the calls or letters his mother purportedly made and sent. Instead, he testified that when his mother, Ms. Mesa, would complain about the late payments, he would call Mr. Spur-lock for her. In contrast to this testimony, Ms. Spurlock testified that Ms. Mesa never called her. Ms. Mesa provided no proof of these calls and she has a copy of only one *1094 letter she purportedly sent to the Spur-locks.
While Ms. Mesa asserted that she was just a simple housewife with no access to a copy machine, the district court did not find this argument persuasive. Instead, the district court found that there was insufficient evidence to find that Ms. Mesa or her son ever called the Spurlocks to complain about the late payments, and there was insufficient evidence to find that Ms. Mesa sent any letters to the Spurlocks prior to this letter of August 18, 1995.
| ¡¡Furthermore, the district court found it relevant that this letter was not sent until some twenty-one months after the date set forth in the loan schedule for making the final payment. In addition, the district court found that the timing of the letter was significant for another reason. According to the Spurlocks this letter was sent only after Ms. Spurlock called Ms. Mesa and told her that she wanted to pay off the loan in a lump sum.
Finally, the district court notes that Ms. Mesa’s letter does not state that she would not accept any additional late payments or that she would foreclose. See Fred H. Moran Construction Corp. v. Elnaggar, 441 So.2d 260, 263 (La.App. 1st Cir.1983) and Sternberg v. Mason, 339 So.2d 373 (La.App. 1st Cir.1976). As the First Circuit noted in Sternberg, swpra at p. 377, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments.
Considering all of the testimony adduced, and the evidence submitted, the district court found that although from the inception of the loan the Spurlocks were routinely late with their payments, these late payments were always accepted. Thus, the district court found that Ms. Mesa did not have a claim for alleged interest owed. We agree.
Ms. Mesa routinely accepted late payments over the course of twenty-two years with evidence of only one complaint made after the date the last payment was to be made. Clearly, this qualifies as a forbearance, which has reached the level of equitable estoppel. The purpose of the doctrine of forbearance is to prevent this very situation: an abuse of the process by demanding an arbitrary accumulation of interest after the note has been paid in order to keep the debtor indebted without knowledge of additional monies owed. The creditor has the duty |fiof informing the debtor of his penalties for late payments prior to 22 years and the completion of the note. Therefore, the district court did not err in holding that Ms. Mesa was precluded from recovering the balance due on the note.
Considering the resolution of the first issue, we pretermit a discussion of whether the district court erred in refusing to allow the introduction of Ms. Mesa’s computer-generated print out of the balance due.

Decree

For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED.